IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORA RASMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>STEVE STANCIL, individually and in his official capacity as Executive Director of the Georgia Building Authority; CAPTAIN LEWIS YOUNG, individually and in his official capacity as Chief of the Capitol Police;<br><br>    Defendants. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

Plaintiff Nora Rasman urgently seeks emergency relief as soon as possible today—the last day of the legislative session—that will allow them to exercise a simple First Amendment right: the right of "public-issue picketing," which is "an exercise . . . of basic constitutional rights in their most pristine and classic form, [and] has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U.S. 455, 466-67 (1980) (citations and quotations

1

omitted). But Plaintiff seeks nothing more than the ability to exercise this basic

First Amendment right in the most modest manner: by silently[1] displaying a hand-

held sign, no bigger than a poster board, in the areas inside the State Capitol

Building that are already open to other members of the public. At any moment,

lawmakers are expected to vote on Senate Bill 452, a bill that Plaintiff believes will

wreak havoc on communities of color by transforming local law enforcement into

federal immigration agents. Plaintiff seeks to display their sign expressing

opposition to SB 452 in the hopes that lawmakers will reject the measure today.

      As discussed below, prohibiting Plaintiff from silently displaying a hand-

held sign no bigger than a poster board in the areas within the State Capitol

Building that are already open to other members of the public (an *ad hoc*

prohibition that does not seem to appear anywhere in any statute or written policy)

violates the First Amendment, principally because such a ban is not narrowly

tailored to serve a significant government interest. This is especially the case

where, as here, existing statutes and guidelines already prohibit visitors from

disrupting legislative business, damaging interior property, and bringing in sticks

---

[1] By "silent," Plaintiff means that they will not yell, chant, or scream. Certainly
Plaintiff may engage in *de minimis*, quiet one-on-one conversations just as any
other member of the public in the building is permitted to do, but Plaintiff does not
intend to extend that speech any further.

2

and poles that may be used as a weapon. Indeed, it is utterly unclear what purpose is served at all by banning the silent display of hand-held signs.

For this reason, and because the other factors weigh in favor of granting a temporary restraining order[2] or preliminary injunction, Plaintiff's motion should be granted.

## FACTUAL BACKGROUND

The facts of this case are simple and are set out in the accompanying Complaint, the facts of which have been sworn to by Plaintiff in the attached

---

[2] Pursuant to Fed. R. Civ. P. 65(b)(1)(B), the undersigned counsel certifies and represents that the possibility of litigation over this precise issue was discussed with Defendants' counsel yesterday, March 28, on or about 3:00 p.m., immediately after the undersigned counsel's services were requested. Because Defendants' counsel was not prepared to definitely state whether a person would be prohibited from silently carrying a hand-held poster board into the public areas of the State Capitol Building, and because Plaintiff was unable to find any statutes or regulations suggesting otherwise, the issue was not ripe. The undersigned counsel then informed Defendants' counsel that litigation may ensue if such an unwritten requirement were enforced the next day. On or about 5:15 p.m., the undersigned counsel sent a message to Defendants' counsel confirming the possibility of litigation on March 29.

The undersigned counsel further represents that as soon as this lawsuit was filed, and without waiting for the ECF system to file-stamp the papers, a pdf of all papers including the Verified Complaint, Motion, and the instant Memorandum were immediately e-mailed to Defendants' counsel, with a request that formal service be waived or accepted. We are currently attempting to hand-deliver a hard copy of the papers to Defendants in-person or through their counsel.

Affidavit. As the Complaint provides, this morning, at or around 10 a.m., Plaintiff sought to enter the State Capitol Building with their hand-held sign, and explained that they intended to display the sign silently in areas of the building open to the public and that they would not obstruct pedestrian traffic. They were told by the Capitol Police to either throw the sign away or leave, and were not allowed entry into the building.

Though Plaintiff was denied the right to silently display a hand-held sign expressing opposition to SB 452 inside the State Capitol Building, all other members of the public are allowed to enter the State Capitol Building to engage in any manner of speech, such as lobbyists having one-on-one conversations with lawmakers about particular bills, tourists stopping to ask about the building's history, or building employees discussing where they should go to lunch.

Plaintiff did not seek this relief earlier because until today, they had no reason to believe that they would definitely be prohibited from silently displaying their hand-held sign in the State Capitol Building. That is because Plaintiff had been unable to find any Georgia statutes, regulations, or governing guidelines that prohibit this act. Georgia law makes it unlawful for "any person to parade, demonstrate, or picket within the state capitol building . . . with intent to disrupt the orderly conduct of official business or to utter loud, threatening, or abusive

4

language or engage in any disorderly or disruptive conduct in such building[].” Ga. Code Ann. § 16-11-34.1(g). But Plaintiff does not seek to disrupt the orderly conduct of official business or utter loud, threatening, or abusive language; to the contrary, Plaintiff wishes to remain entirely silent. In any event, no reasonable person would construe the silent display of a sign to evince intent to disrupt the orderly conduct of official business. There also do not appear to be any regulations governing this situation.

The Georgia Building Authority, which essentially functions as the landlord of the State Capitol Building, has published “Exhibit and Event Guidelines” found at https://bit.ly/2IaaNCl[3] (hereinafter “Guidelines”) which governs the interior use of the State Capitol Building. But nothing in the Guidelines prohibits the silent display of hand-held signs. Section 2.1.8 of the Guidelines prohibits “Posting, hanging, or affixing signs . . . on any exterior or interior surface of the Capitol building,” but Plaintiff does not seek to post, hang, or affix their sign on any part of the Capitol building. Section 2.2.12 prohibits the “use of sticks/poles . . . inside the Capitol building,” including its “attachment to cardboard signs, placards, and

_____

[3] The full URL is https://gba.georgia.gov/sites/gba.georgia.gov/files/related_files/document/Capitol%20and%20Grounds%20Exhibit%20and%20Event%20Guidelines.pdf.

flags," but Plaintiff's sign is hand-held and not affixed to any stick or pole. In addition, visitors are scanned for metal upon entering the building.

The Appendix to the Guidelines, consisting of an "Awareness Statement" that event organizers are required to sign, does state that it is "illegal for any person to parade, demonstrate, or picket within the State Capitol Building," purporting to quote Ga. Code Ann. § 16-11-34.1(f). But this backdoor provision tellingly misquotes the statute because it omits the important qualifying phrase, "with intent to disrupt the orderly conduct of official business."

It was not until this morning, when Plaintiff was definitively banned from entering the State Capitol Building with their hand-held sign, that this lawsuit was immediately filed.

## ARGUMENT

A temporary restraining order or preliminary injunction is warranted if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that an injunction would not disserve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Odebrecht Const., Inc. v. Sec'y, Florida Dep't of Transp.*, 715 F.3d 1268, 1273-74 (11th Cir. 2013).

As discussed below, consideration of each of these four factors supports Plaintiff's request for preliminary relief.

**I.      Plaintiff Is Substantially Likely to Succeed on the Merits of Their First Amendment Claim**

Plaintiff is substantially likely to succeed on the merits of their First Amendment claim. This case concerns Plaintiffs' ability to silently picket with small, hand-held signs in the public areas of the State Capitol Building, the kind of activity deserving of the strongest First Amendment protection. As the Supreme Court has explained, "public-issue picketing" is "an exercise . . . of basic constitutional rights in their most pristine and classic form, [and] has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U.S. 455, 466-67 (1980) (citations and quotations omitted). Furthermore, the historic, century-old State Capitol Building is the seat of both the executive and legislative branches of Georgia, and the inside of the building "might well be considered to be the heart of [Georgia's] expressive activity and exchange of ideas." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). After all, every Georgia citizen has the right to petition his or her government, and the State Capitol Building represents is where the democratic, deliberative lawmaking process takes place.

The First Amendment inquiry typically starts with determining what kind of forum is at issue: a traditional public forum, a designated public forum, a limited public forum, or a nonpublic forum. *See Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1224-25 (11th Cir. 2017). Traditional public fora are government properties that have historically been used as places of discussion and debate. *Id.* at 1224. Designated public fora are government properties that have not traditionally been sites for public debate but have been intentionally opened up for that purpose. *Id.* Both limited public fora and nonpublic fora are government properties that are not completely open to the public. *Id.* at 1225. It is undisputed that there are parts of the State Capitol Building which are open to the public, and that those are the parts where Plaintiff seeks to conduct their silent picketing.

Thus, the area at issue is either a traditional public forum or a designated public forum, but this Court need not resolve this question because either way, any content-neutral time, place, or manner restriction on protected speech must be "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014) (applying this test to a traditional public forum); *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (applying this test to a designated public forum). This inquiry has been characterized as "intermediate scrutiny." *Solantic LLC v. City of Neptune Beach*, 410 F.3d 1250,

1258 (11th Cir. 2005). As the Supreme Court explained, "The tailoring requirement does not simply guard against an impermissible desire to censor. The government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience. . . . [B]y demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency." *McCullen*, 134 S. Ct. at 2334 (citation and quotation omitted).

An *ad hoc* ban on the silent hand-carrying of signs no bigger than a poster board in the public interiors of the State Capitol Building is not narrowly tailored to serve a significant governmental interest. There appear to be three potential government justifications for this kind of restriction, but existing statutes and guidelines already address them adequately.[4]

First, Defendants would likely argue that there is a significant government interest in ensuring that the orderly conduct of official business being conducted in

---

[4] As a preliminary matter, the fact that this *ad hoc* ban is not even grounded in any actual statute or guideline only confirms that the existing rules are more than sufficient to satisfy any government interests. This means that not even the legislature found it necessary to impose such a ban when crafting laws governing proper behavior in the State Capitol Building, and not even the Georgia Building Authority, using whatever internal procedures it uses when promulgating the Guidelines, saw fit to explicitly impose such a ban.

the State Capitol Building is not materially disrupted. But there is already a statute for that: Ga. Code Ann. § 16-11-34.1(g), which makes it unlawful for anyone to "parade, demonstrate or picket within the state capitol building . . . with intent to disrupt the orderly conduct of official business." Because Plaintiff does not intend to yell, scream, or chant, and will instead remain completely silent, there is no justification for prohibiting such silent protest.

To the extent Defendants speculate that the message on the sign might cause a distraction or spur unrest and mayhem, the *ad hoc* ban sweeps too broadly to achieve this interest. This exact same argument was considered and rejected in *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 57 (D.D.C. 2000), which struck down a federal law making it illegal to "parade, demonstrate, or picket within any of the Capitol Buildings," without qualification. As the court explained, "While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as 'speechmaking . . . or other expressive conduct." *Id*. Similarly, over 50 years ago, the Supreme Court held that the government could not forbid Jack Cohen from wearing a jacket stating "F**k the Draft," even in as sensitive of a location as a courthouse, where there was no evidence of violent reaction. *See Cohen v. California*, 403 U.S. 15, 20

10

(1971). Such reasoning would also be tantamount to upholding a "heckler's veto," when it is impermissible for the government to prohibit speech "because of poor audience reaction" to the content of such messages. *See McMahon v. City of Panama Beach*, 180 F. Supp. 3d 1076, 1110 (N.D. Fla. 2016) (citing cases). It is unclear what material difference there is between someone wearing a message on a jacket and someone holding a poster-board-sized sign with that exact same message. In any event, Defendants already have the authority to prevent disruption. *See generally* Ga. Code Ann. § 16-11-34.1.

Second, Defendants could argue that they have a significant government interest in protecting government property or promoting aesthetics. But Section 2.1.8 of the Guidelines already prohibits "Posting, hanging, or affixing signs . . . on any exterior or interior surface of the Capitol building," and Plaintiff does not seek to post, hang, or affix their sign on any part of the Capitol building interior, so it is unclear how a blanket ban on hand-held signs, which are both temporary and solely confined to the person holding the sign, will somehow mar the interior aesthetics of the large historic building. *See, e.g.*, *Watters v. Otter*, 989 F. Supp. 2d 1162, 1175 (D. Idaho 2013) (constitutional to prohibit persons from staking signs on the public grounds for aesthetic purposes, when protesters were still allowed to carry "signs or banners"). Courts have struck down similarly overbroad laws

11

because they were not narrowly tailored to satisfy the government's aesthetic interests. *See, e.g.*, *Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 464 (6th Cir. 2005) (ban on use of temporary display not narrowly tailored to achieve aesthetic interests); *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 388 (6th Cir. 1996) (blanket ban on lawn signs not narrowly tailored to achieve aesthetic interests);

Third, Defendants could assert a significant government interest in security. Again, however, the Guidelines already explicitly prohibit the "use of sticks/poles . . . inside the Capitol building," including its "attachment to cardboard signs, placards, and flags." This is consistent with court decisions that have upheld bans on signs carried by a stick or a pole because they may be used as a weapon. *See, e.g.*, *A.N.S.W.E.R. Coalition v. Jewell*, 153 F. Supp. 3d 395 (D.D.C. 2016). But it is utterly unclear how hand-held poster boards, which Plaintiff seeks to use, pose any such threat. Indeed, the Sixth Circuit has held that it unconstitutional for the government to tear up a protester's hand-held sign even when they were in close proximity to the President of the United States, where security concerns are presumably at their highest. *See Glasson v. City of Louisville*, 518 F.2d 899, 905 (6th Cir. 1975) (unconstitutional for police officer to rip up poster being displayed

on the route of a presidential motorcade), *overruled on other grounds*, 805 F.3d 228.

To the extent that Defendants assert some other vague security concern, they are unlikely to demonstrate any kind of "nexus" between a ban on hand-held sign and "the significant state interest of maintaining peace and order in the Capitol." *Kissick v. Huebsch*, 956 F. Supp. 2d 981, 1002 (W.D. Wis. 2013). In any event, this Court need look no further than *McCullen v. Coakley*, 134 S. Ct. 2518, 2537 (2014), where the Supreme Court expressly rejected the government's argument that it had to prohibit protest and other speech near abortion clinics because of "public safety." The Supreme Court noted that Massachusetts already had a law prohibiting many of the acts, such as obstruction, that gave rise to the government's security concerns. Similarly here, Georgia already has a law prohibiting much of the conduct that might give rise to any security concerns. *See* Ga. Code Ann. § 16-11-34.1. And just as the Supreme Court rejected the government's alleged fear that "large numbers" of protesters would raise heightened security concerns because of existing laws against obstructing pedestrian traffic, *McCullen*, 134 S. Ct. at 2538-39, it is already illegal in Georgia to obstruct pedestrian traffic. *See* Ga. Code Ann. § 16-11-34.1(d) ("It shall be unlawful for any person purposely or recklessly . . . to obstruct any hallway, office,

or other passageway in that area designated as Capitol Square . . . in such a manner as to render it impassable without unreasonable inconvenience or hazard)".

In sum, it is simply unclear "that alternative measures that burden substantially less speech"—such as the measures already enacted by the statute or the Guidelines—"would fail to achieve the government's interests." *McCullen*, 134 S. Ct. at 2540. Undoubtedly, banning silent, sign-carrying protesters would make Defendants' jobs easier by reducing the number of people in the building, but "the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. Nat'l Fed. for the Blind of N.C.*, 487 U.S. 781, 795 (1988). *See, e.g.*, *Kissick*, 956 F. Supp. 2d at 1000 (speech restrictions within Wisconsin State Capitol building were not narrowly tailored to achieve the government's interest in "ensur[ing] the presence of adequate police resources at the Capitol" or "manag[ing] competing demands for public space in the Capitol.").

For these reasons, Plaintiff is substantially likely to succeed on the merits of their First Amendment claim.

## II. The Remaining Factors Weigh in Favor of a Temporary Restraining Order or Preliminary Injunction

The remaining factors this Court must consider also weigh in favor of granting a temporary restraining order. It is well-established that the suppression of

14

speech constitutes irreparable injury. *See Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). As for weighing the balance of hardships, it is not at all clear how Defendants will suffer if people are allowed to quietly display hand-held signs given all of the existing statutes and Guidelines that address the government's interests. More importantly, the fact that Plaintiff had no advance notice that such a policy was in place, given that it appears nowhere in any statute, regulation, or the Guidelines, further weighs in favor of an immediate injunction. Finally, an injunction allowing Plaintiff to silently display messages on hand-held poster signs does not disserve the public interest. *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001) ("[T]he public interest is always served in promoting First Amendment values.").

//

//

## CONCLUSION

Defendants' *ad hoc* ban on silently carrying hand-held signs in the public areas of the State Capitol Building is not narrowly tailored to achieve a significant government interest, especially since existing statutes and Guidelines already adequately address the government's concerns. If neither the legislature nor the Georgia Building Authority itself saw fit to explicitly impose such a ban by statute

15

or guideline, it is suspect whether any justification might exist for such a ban.

Plaintiffs respectfully urge this Court to grant its motion for a temporary

restraining order or preliminary injunction enjoining Defendant from enforcing any

ban on the quiet display of hand-held poster signs in the public areas of the State

Capitol Building.

Respectfully submitted,

this 29th of March, 2018

/s/ Sean J. Young_____

Sean J. Young (Ga. Bar No. 790399)
Aklima Khondoker (Ga. Bar No. 410345)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111
syoung@acluga.org
akhondoker@acluga.org

Attorneys for Plaintiffs